UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-CR-00424-SRC |
| | ) |
| JOSEPH RANDER, | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

COME NOW, the parties, and hereby agree as follows:

### 1. PARTIES

The parties are defendant Joseph Rander (hereinafter "Defendant"), represented by defense counsel Susan McGraugh, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA

Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, **in exchange for Defendant's voluntary plea of guilty to Count(s) I, II, III, and V of the indictment, the Government agrees to dismiss Count IV and further agrees no further federal prosecution**

1

**will be brought in this District relative to Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the indictment.**

In addition, the parties agree the U.S. Sentencing Guidelines Total Offense Level analysis, agreed to by the parties herein, is the result of negotiations and led, in part, to the guilty plea. The parties further agree that they will jointly request a sentence below the U.S. Sentencing Guidelines range (a combination of the "Total Offense Level" and the "Criminal History Category") as ultimately determined by the Court pursuant to any chapter of the Guidelines and 18 U.S.C. § 3553(a). **The Parties will jointly request a sentence of 84 months' imprisonment at the time of sentencing.** The parties understand the Court is neither a party to nor bound by the Guidelines recommendations contained herein

Defendant also agrees, pursuant to the guilty plea to Counts I through IV, to forfeit to the United States all property subject to forfeiture under the applicable statute(s). This includes the following: (1) one Glock semiautomatic 9MM Luger; (2) $37,040.00 in U.S. Currency constituting drug proceeds: and (3) one Davis Industries Model P .380 caliber pistol.

## 3. ELEMENTS

As to Count I, Defendant admits to knowingly violating 21 U.S.C. § 846, admits there is a factual basis for the plea, and fully understands the elements of the crime are as follows:

- A. *One*, on or before January 30, 2019, two or more persons reached an agreement or came to an understanding to distribute heroin and cocaine base; and
- B. *Two*, Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and
- C. *Three*, at the time Defendant joined in the agreement or understanding, he knew the purpose of it.

As to Count II, Defendant admits to knowingly violating 21 U.S.C. § 841(a)(1), admits there is a factual basis for the plea, and fully understands the elements of the crime are as follows:

- **A. *One*,** on or about February 13, 2019, within the Eastern District of Missouri, Defendant possessed heroin; and
- **B. *Two*,** Defendant knew he was in possession of a controlled substance; and
- **C. *Three*,** Defendant intended to distribute some or all of the heroin to another person.

As to Count III, Defendant admits to knowingly violating 21 U.S.C. § 841(a)(1), admits there is a factual basis for the plea, and fully understands the elements of the crime are as follows:

- **A. *One*,** on or about February 13, 2019, within the Eastern District of Missouri, Defendant possessed cocaine base; and
- **B. *Two*,** Defendant knew he was in possession of a controlled substance; and
- **C. *Three*,** Defendant intended to distribute some or all of the cocaine base to another person.

As to Count V, Defendant admits to knowingly violating 18 U.S.C. § 922(g)(1), admits there is a factual basis for the plea, and fully understands the elements of the crime are as follows:

- **A. *One*,** before February 13, 2019, Defendant was convicted of a crime punishable by a term of imprisonment exceeding one year; and
- **B. *Two*,** thereafter, Defendant on or about February 13, 2019, knowingly possessed a firearm—a Glock semiautomatic 9MM Luger pistol; and
- **C. *Three*,** at the time Defendant knowingly possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year; and
- **D. *Four*,** the firearm was transported across a state line at some time during or before Defendant's possession of it.

## 4. FACTS

The parties agree the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

3

### *A. Controlled Buys Between January 30, 2019, and February 11, 2019.*

On January 30, 2019, a confidential source (CS) for the Drug Enforcement Administration (DEA) met Defendant at the Neighbors Good Eats Restaurant located at 6101 Lilian Ave, St. Louis, Missouri. During that meeting, Defendant gave the CS a "sample" of heroin. Defendant then handed his cell phone to the CS where someone on the line named "Bones," a California-based source of supply, told the CS that he could sell to CS kilogram quantities of heroin, if desired. The meeting then concluded, and Defendant was observed entering the backyard of a residence located at 6119 Lilian Avenue. The "sample" was lab tested and confirmed to be 0.338 grams of heroin.

On February 5, 2019, CS met with Bones at 5725 Dale Avenue, St. Louis, Missouri. At that time, Bones was having difficulty making contact with his own source of supply but told the CS that he needed to sell the "remainder of the kilogram of heroin that was given to Rander" before he could facilitate further receipt of heroin into the St. Louis area. No deal was completed. However, after surveilling him following the meeting, Bones was observed parking his car in front of 6119 Lilian Avenue before entering into another vehicle, believed to be driven by an unindicted co-conspirator, and driving off.

On February 11, 2019, the CS met with Bones again, this time in front of the same Neighbors Good Eats Restaurant as mentioned above. Before the meeting took place, Bones was observed leaving the residence at 6119 Lilian Avenue. Bones and the CS had agreed, by phone beforehand, to exchange approximately one ounce of heroin for $1,500.00. The CS completed the

deal and returned to investigators with what was confirmed by lab testing to be 22.90 grams (i.e. roughly 0.8 ounces) of heroin.

### B. *February 13, 2019, Search Warrant Execution at 6119 Lilian Avenue.*

On February 13, 2019, investigators—having witnessed both Defendant and Bones frequent the residence at 6119 Lilian Avenue—sought and gained a search warrant to search what was ultimately confirmed to be Defendant's place of residence. At approximately 3:00 PM, investigators arrived at 6119 Lilian Avenue and were confronted by Defendant and an unindicted third party. Defendant attempted to flee but was quickly taken into custody. A search of the resident revealed the following items to be directly attributable to Defendant:

(1) Three knotted plastic baggies of suspected crack cocaine inside a green tin in Defendant's bedroom closet—lab confirmed to be 19.688 grams cocaine base;

(2) One knotted plastic bag of suspected marijuana located inside a green tin in Defendant's bedroom closet;

(3) One Capresso blender with suspected heroin residue located beneath the bed in Defendant's bedroom;

(4) Two knotted plastic baggies of suspected heroin located inside a white vase in Defendant's bedroom—lab confirmed to be 36.45 grams of heroin powder;

(5) One knotted plastic bag of pill capsules located inside a white vase in Defendant's bedroom—lab confirmed to be 23.70 grams of heroin powder;

(6) Five plastic baggies of suspected heroin located inside a bowl in the kitchen—lab confirmed to be 0.655 grams of heroin powder and 0.287 grams of cocaine base;

(7) One plastic baggie of suspected heroin located inside a pantry in the kitchen—lab confirmed to be 6.90 grams of heroin powder;

(9) One Glock semiautomatic 9MM Luger pistol located underneath a mattress in Defendant's bedroom;

(10) One extended firearm magazine and 27 rounds of ammunition located inside the Glock pistol;

(11) Various identifying documents, including Defendant's birth certificate located underneath the mattress of Defendant's bedroom next to the above-described Glock pistol; and

(12) US Currency inside a shoe in the closet of Defendant's bedroom, desk drawer in the first bedroom, and in the pocket of Defendant.

The firearm found—what was determined to be a Glock Model 19C—was submitted to the St. Louis County Police Department Crime Laboratory (SLCPDCL). As stated, it was equipped with a loaded, 27-round extended magazine at the time of its seizure and was located in close proximity to various drugs and drug paraphernalia belonging to Defendant. SLCPDCL determined the gun was originally manufactured in Smyrna, Georgia, and thus had crossed state lines to come into Defendant's possession in Missouri. Further, the gun was test-fired and found to be operational. Defendant acknowledges he has been convicted of at least one felony crime punishable by more than a year of imprisonment, and further acknowledges that he was aware of his status as a felon at the time he possessed the above-referenced firearm.

Based on several pieces of mail found inside a second bedroom unaffiliated with Defendant, Defendant is believed to have been living with another, unindicted third party who was not at the residence during the search execution. In that second bedroom, additional quantities of drugs, firearms, and paraphernalia were located—these quantities and additional firearms have not been applied against Defendant in any sentencing calculations as there is insufficient evidence, at this time, to establish Defendant had a possessory interest in these items. Packaging material containing suspected heroin residue was also located inside a basement closet.

### C. *Post-Search Interview of Defendant.*

After the search was completed, Defendant was interviewed. Defendant was read his Miranda rights and told investigators he understood his rights and would nonetheless elect to speak

6

to them. Defendant told investigators he allowed someone named "G"—using the same cell phone number as Bones and believed to be Bones—to stay at his house and use the basement to break down half-kilogram quantities of heroin for distribution. Defendant further admitted he was engaging in drug distributions on G/Bones' behalf and was to complete such a transaction prior to his arrest.

### D. *Defendant's Arrest on August 12, 2021, and Seizure of Additional Firearm and Drugs.*

On August 12, 2021, the DEA and U.S. Marshal's Service conducted a joint operation to arrest Defendant. He was located at 4037 St. Louis Avenue, St. Louis, Missouri. Investigators reported that they saw Defendant through a front window attempting to move towards the back of the house as they announced their presence—potentially in an effort to evade arrest. Investigators then forced entry into the house and arrested Defendant. Additional quantities of drugs, cash, and an unloaded firearm were found. The firearm was a Davis Industries Model P .380 caliber pistol located in an open dresser drawer in the residence's front bedroom. Defendant admitted to investigators that he possessed additional drugs in a safe located inside a blue suitcase. After given permission to search that safe, investigators located $37,040.00 in U.S. Currency, constituting drug proceeds, and several clear plastic bags containing a "white, rock-like substance" suspected to be cocaine base. These drugs were confirmed by lab testing to be 232.00 grams of cocaine base.

### E. *Summary of Firearm and Drugs Seized Attributable to Defendant.*

In summary, the total amount of drugs directly attributable to Defendant's conduct, and that of his con-conspirators, is 90.943 grams of heroin and 251.975 grams of cocaine base. Defendant was also in possession of a loaded Glock 19C semiautomatic 9MM Luger pistol,

equipped with a loaded and extended 27-round magazine, which was stored in close proximity to Defendant's drugs and drug paraphernalia.

## 5. STATUTORY PENALTIES

As to Counts I, II, & III, Defendant fully understands the maximum possible penalty provided by law, pursuant to 21 U.S.C. § 841(b)(1)(C), for the crime to which Defendant is pleading guilty is: imprisonment of not more than twenty (20) years; a fine of not more than $1,000,000.00; or both such imprisonment and fine. The Court *shall* also impose a period of supervised release of not less than three (3) years.

As to Count V, Defendant fully understands the maximum possible penalty provided by law, pursuant to 18 U.S.C. §§ 924(a)(2), 3571(b)(3), & 3583(b)(2), for the crime to which Defendant is pleading guilty is: imprisonment of not more than ten (10) years; a fine of not more than $250,000.00; or both such imprisonment and fine. The Court *may* impose a period of supervised release of not more than three (3) years.

When charged under Section 922(g), as here, and in certain situations specified in 18 U.S.C. § 924(e), Defendant may be treated as an "armed career criminal." *If applicable, this imposes a mandatory minimum sentence of imprisonment of fifteen (15) years* and a maximum of life, a fine of not more than $250,000.00, or both such imprisonment and fine, and a term of supervised release of not more than five (5) years. Defendant is pleading guilty with full knowledge of these possible statutory enhancements, has discussed them with counsel, and will not be permitted to withdraw the guilty plea if the Court determines Section 924(e) applies to Defendant's sentence.

### 6. U.S. SENTENCING GUIDELINES (2018 MANUAL)

Defendant understands the offenses are affected by the U.S. Sentencing Guidelines (U.S.S.G.) and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree the following are the U.S.S.G. Total Offense Level provisions that apply:

### COUNTS I, II, & III
### **OFFENSES UNDER 21 U.S.C. §§ 841, 846**

#### A. Chapter 2 Offense Conduct

(1) **Base Offense Level:** The parties agree that, as to Counts I, II, & III, **the Base Offense Level is 28**. This is because, by operation of the aggregating mechanics of Sections 3D1.2(d) and 3D1.3(b), the parties agree the quantity of heroin for which Defendant is accountable, including relevant conduct, is 90.943 grams and the quantity of cocaine base for which Defendant is accountable, including relevant conduct, is 251.975 grams, which equal a converted drug weight of 990.745 kilograms and, thus, fall between Section 2D1.1(c)(6)'s range of 700 to 1,000 kilograms of converted drug weight.

#### B. Specific Offense Characteristics

The parties agree the following Specific Offense Characteristics apply:

(1) **U.S.S.G. § 2D1.1(b)(1): Two (2) levels should be added** because the facts show Defendant maintained possessed a firearm in connection with the drug offenses.

(2) **U.S.S.G. § 2D1.1(b)(12): Two (2) levels should be added** because the facts show Defendant maintained a drug premises at 6119 Lilian Avenue.

#### C. Chapter 3 Adjustments

The parties agree that the following adjustments under Chapter 3 apply:

9

**(1) Acceptance of Responsibility:** The parties agree **three (3) levels should be deducted** pursuant to Section 3E1.1(a) and (b) because Defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of Defendant's intention to plead guilty. The parties agree Defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by Defendant that it believes is inconsistent with Defendant's eligibility for this deduction, the Government may, without violating the plea agreement, present said evidence to the Court and argue that Defendant should not receive all or part of the deduction pursuant to Section 3E1.1.

### D. Other Adjustments

The parties agree the following additional adjustments apply: **NONE**.

**E. Disputed Adjustments: NONE**.

## COUNT V

## **OFFENSE UNDER 21 U.S.C. § 922(g)(1)**

### A. Chapter 2 Offense Conduct

**(1) Base Offense Level:** The parties agree that a proper Guidelines calculation of the of <u>Count V</u> depends on, among other things, an accurate account of Defendant's criminal history and the characteristics of firearms possessed; therefore, **the parties agree only that Section 2K2.1(a) applies and leave the proper calculation of the Base Offense Level of Count V to the Court's determination**. The parties further recognize the Base Offense Level may also be determined under Section 4B1.4 if Defendant is determined to be an Armed Career Criminal.

## B. Specific Offense Characteristics

**(1) U.S.S.G. § 2K2.1(b)(6)(B): Four (4) levels should be added** because the facts show Defendant possessed a firearm in connection with another felony offense, namely the drug trafficking offenses in Counts I, II, and III.

## C. Chapter 3 Adjustments

The parties agree that the following adjustments under Chapter 3 apply:

**(1) Acceptance of Responsibility:** The parties agree **three (3) levels should be deducted to the Grouped Offense Level** pursuant to Section 3E1.1(a) and (b) because Defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of Defendant's intention to plead guilty. The parties agree Defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by Defendant that it believes is inconsistent with Defendant's eligibility for this deduction, the Government may, without violating the plea agreement, present said evidence to the Court and argue that Defendant should not receive all or part of the deduction pursuant to Section 3E1.1.

## D. Other Adjustments

The parties agree the following additional adjustments apply: **NONE**.

## E. Disputed Adjustments: NONE.

## SUMMARY OF TOTAL OFFENSE LEVEL CALCULATIONS

**F. Estimated Total Offense Level:** Based on the points outlined above and the parties' agreement thereto, the parties estimate the Total Offense Levels are as follows:

11

**(1) Counts I, II, & III**: The parties agree the **Total Offense Level for Counts I, II, & III is 29,** unless Defendant is a Career Offender. Depending on the underlying offense and Defendant's criminal history, Defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds Defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the Defendant is or is not a Career Offender.

The Department of Justice supports elimination of the powder-to-crack sentencing disparity and therefore the Court may, consistent with the law and current sentencing framework, consider whether the powder-to-crack disparity is warranted in assessing the Section 3553(a) factors. **If the cocaine base involved in this case was calculated as powder cocaine, the resulting base offense level would be 24 and resulting total offense level would be 25.**

**(2) Count V**: The parties agree that **the Total Offense Level for Count V cannot be determined at this time and leave a proper calculation to the Court's determination.** Therefore, the parties agree only that Section 2K2.1(a) applies. The parties further recognize the Base Offense Level may also be determined under Section 4B1.4 if Defendant is determined to be an Armed Career Criminal.

The parties further agree that **Counts I, II, III, and V should be grouped pursuant to Section 3D1.2(c).** Where a firearm offense (Count V) enhances drug trafficking offenses (Counts I, II, and

III), as here, it is appropriate under Eighth Circuit precedent to group these offenses together for purposes of determining a combined sentencing range.[1]

\* \* \* \* \*

**G. Criminal History:** The **determination of Defendant's Criminal History Category shall be left to the Court**. Either party may challenge, before and during sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

**H. Effect of Parties' U.S. Sentencing Guidelines Analyses:** The parties agree the Court is not bound by the Guidelines analyses agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement in such an event. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

**A. Rights to Appeal:** Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under 18 U.S.C. § 3742.

---

[1] *See United States v. Espinosa*, 539 F.3d 926, 929 (8th Cir. 2008) (it is appropriate to group firearm and drug counts when there have been guideline enhancements on the basis of each other).

**(1) Waiver of Non-Sentencing Issue Appealability:** The *parties hereby waive all rights to appeal all non-jurisdictional, non-sentencing issues*, including but not limited to any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty, and whether Defendant's conduct falls within the scope of the statute(s).

**(2) Waiver of Sentencing Issue Appealability:** In the event the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences Defendant within or below that corresponding range, then, as a part of this agreement, *Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category*. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences Defendant within or above that corresponding range.

**B. Waiver of Habeas Corpus Relief:** *Defendant agrees to waive all rights to contest the conviction or the sentence in any post-conviction proceeding*, including one pursuant to 28 U.S.C. § 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**C. Waiver of Right to Records:** Defendant *waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case*, including any record(s) that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, and/or the Privacy Act, 5 U.S.C. § 552(a).

## 8. OTHER AGREED-UPON PROVISIONS

**A. Disclosures Required by the United States Probation Office:** Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**B. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant.

**C. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

**D. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a **total special assessment of $400.00**, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**E. Possibility of Detention:** Defendant may be subject to immediate detention pursuant to the provisions of 18 U.S.C. § 3143.

**F. Fines, Restitution, Costs of Incarceration & Supervision:** The Court may impose a fine, costs of incarceration, and costs of supervision. Defendant agrees any fine imposed by the Court will be due and payable immediately.

**G. Forfeiture of Items Seized:** Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. Defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, Defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

Defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. **Defendant specifically agrees to the forfeiture of the following: (1) one Glock semiautomatic 9MM Luger; (2) $37,040.00 in U.S. Currency constituting drug proceeds: and (3) one Davis Industries Model P .380 caliber pistol**. Defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to Defendant when it is issued and will be part of the sentence. Defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. Defendant will execute any documents

16

and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. Defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS

In pleading guilty, Defendant acknowledges, fully understands, and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence; and the right to compel attendance of witnesses. Defendant further understands that, by entering this guilty plea, Defendant expressly waives all rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of waiving these rights. Defendant fully understands that, as a result of the guilty plea, no trial will occur and the only action remaining to be taken in this case is to impose a sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the Government's evidence and discussed the Government's case—including all possible defenses and defense witnesses—with defense counsel. Defense counsel has completely and satisfactorily explored all areas that Defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact Defendant's immigration status or result in deportation. In particular, if any crime to which Defendant is pleading guilty is an "aggravated felony," as defined by 8 U.S.C. § 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised Defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT

This document constitutes the entire agreement between Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if Defendant commits any crime (other than minor traffic offenses), violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete, or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, then the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Rules 11(c) and 11(d) of Federal Rules of Criminal Procedure, Defendant understands there will be no right to withdraw the plea entered under this agreement except where the Court rejects those portions of the plea agreement that deal with charges the Government agrees to dismiss or not to bring.

| | |
|---|---|
| **10 NOV 2022** <br> Date | *Shane K. Blank* <br> SHANE K. BLANK, #65787MO <br> Assistant United States Attorney |
| 11-9-2022 <br> Date | JOSEPH RANDER <br> Defendant |
| 11-9-2022 <br> Date | SUSAN MCGRAUGH <br> Attorney for Defendant |

19